STATE of South Dakota, Plaintiff
and Appellant,

v.

Don Bryan RICKABAUGH, John Larry
Dresen, and Donald D. Dresen,
Defendants and Appellees.

No. 14641.

Supreme Court of South Dakota.

Argued Oct. 22, 1984.

Decided Jan. 23, 1985.

Douglas E. Kludt, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Stanley E. Whiting, Winner, for defendant and appellee, Rickabaugh.

Steven R. Jorgensen, Sioux Falls, for defendants and appellees, John Dresen and Donald Dresen.

DAVIS, Circuit Judge

The State petitioned for discretionary appeal from an order granting Defendant-Appellee's, Rickabaugh, motion to suppress statements. We allowed the State's petition and ordered the proceedings below stayed pending the outcome of the appeal. The circuit court's decision is affirmed.

On July 9, 1982, Rickabaugh's combine caught fire and burned. After hearing rumors that the State was investigating the fire's cause, Rickabaugh contacted Wally Eklund, an attorney from Gregory.

As a result of various phone calls and letters, Eklund and State's Attorney Steele arranged a polygraph examination for Rickabaugh. Eklund suggested and it was agreed that he would hire and pay R.H. White, an independent polygraph tester, instead of using a DCI agent. Eklund then contacted Rickabaugh and in a letter to him stated that "[i]t would also be my intention to make it clear that no statements made during the taking of the polygraph examination or the results of the examination itself could be used as evidence."

On May 27, 1983, White tested Rickabaugh at his Sioux City office. Agent Muller, Sheriff Edinger, and Eklund were also present at the examination site, but not in the examination room. The State requested Muller and Edinger's attendance to assist White if he had any questions concerning the State's investigation.

At the examination's conclusion, Eklund went into White's office. White told Eklund that Rickabaugh had something to tell him. White indicated that Rickabaugh told him a different version of the facts during the examination and Rickabaugh proceeded to relate those facts to Eklund. Eklund and Rickabaugh spoke and at the end of their conversation, Eklund stated that he was not sure he could represent Rickabaugh anymore. Rickabaugh became upset and walked out, but later returned and stated, "I didn't say anything. If he [White] said I did, I'm going to call you [White] a God damned liar."

Prior to Rickabaugh's leaving, Eklund asked White if he could mail the examination report to the State. White told Eklund he would send the report to Eklund and he could then do what he wanted to do with the report. Prior to leaving, Eklund instructed White to at least tell Muller and Edinger "what happened." White then proceeded to tell Muller and Edinger of Rickabaugh's confession.

On January 16, 1984, Rickabaugh filed a motion to suppress his statements that he made to White. The lower court granted the motion and the State subsequently appealed the order.

■ On appeal, the State contends that the trial court erred in suppressing Rickabaugh's statement to White based on the attorney-client privilege. We are not convinced the trial court's findings of fact were clearly erroneous, against a clear preponderance of the evidence or not supported by credible evidence. *State v. Spoonemore*, 287 N.W.2d 109, 110 (S.D. 1980).

SDCL 19–13–3 states the attorney-client privilege:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client

(1) between himself or his representative and his lawyer or his lawyer's representative,

(2) between his lawyer and the lawyer's representative[.]

■ Four minimum elements must exist to invoke the privilege: (1) a client; (2) a confidential communication; (3) the commu-

nication was made for the purpose of facilitating the rendition of professional legal services to the client; and (4) the communication was made in one of the five relationships enumerated in SDCL 19-13-3. *State v. Catch The Bear*, 352 N.W.2d 640, 645 (S.D.1984). Further, the person claiming the privilege has the burden of establishing all of the essential elements. *Id.*

■ The first issue presented to this court is whether Rickabaugh's statements to White are protected within the attorney-client privilege. SDCL 19-13-2(4) defines "a representative of the lawyer" as "one employed by the lawyer to assist the lawyer in the rendition of professional legal services." We are firmly convinced that White was Eklund's representative.

Prior to White's employment, rumors were circulating concerning an investigation of Rickabaugh's combine fire. Eklund contacted Steele concerning a polygraph and they agreed that if Rickabaugh passed the polygraph test, the State would not continue its investigation. Because Eklund was not qualified to determine the truthfulness of Rickabaugh's statements through a scientific method, he hired White. As a result of his expertise, White was instrumental in assisting Eklund in rendering legal services to Rickabaugh.

■ Further, Rickabaugh's communications were confidential. SDCL 19-13-2(5) states that "[a] communication is 'confidential' if [it is] not intended to be disclosed to third persons other than those whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Several pieces of testimony demonstrate that the communication was to be confidential. First, in a letter to Rickabaugh, Eklund wrote, "[i]t would also be my intention to make it clear that no statements made during the taking of the polygraph examination or the results of the examination itself could be used as evidence." Further, Eklund wrote, "I don't think that they [the State] have a case that they can win at this point and you certainly do not want to provide any additional evidence by which they might be able to convict you even assuming your innocence." Based on these letters, Rickabaugh had an expectation that anything he said to White would not be disclosed to third persons other than those whom disclosure is made in the furtherance of rendition of legal services. Therefore, Rickabaugh's statements to White are protected through the attorney-client privilege.

■ The final issue is whether Rickabaugh waived the attorney-client privilege. Only a client can waive the attorney-client privilege if he voluntarily or through his attorney discloses the communication's contents or advice to someone outside the relationship. *Catch The Bear, supra,* at 647. The State has the burden of proving that a waiver occurred. *Id.*

■ The facts demonstrated that a waiver did not occur. The record is void of any statements or actions taken by Rickabaugh which indicate that he consented to a waiver. Further, Eklund advised Rickabaugh that anything stated during the polygraph examination could not be used against him.

That State relied heavily on the fact that Rickabaugh was present when Eklund indicated to White that he should tell Muller and Edinger "what happened" during the examination to demonstrate Rickabaugh's waiver of the attorney-client privilege. The State is attempting to turn inadmissible evidence into admissible evidence by playing a game in semantics. The State is stretching the statement "what happened" to mean the entire conversation, instead of the pass-fail result. Therefore, the record does not demonstrate that Rickabaugh impliedly or explicitly consented to his attorney waiving the attorney-client privilege on his behalf.

The State's remaining arguments lack merit and we will not address them. We affirm the circuit court's decision.

FOSHEIM, C.J., and WOLLMAN, MORGAN and HENDERSON, JJ., concur.

DAVIS, Circuit Judge, sitting for WUEST, Acting Justice, disqualified.